NOT DESIGNATED FOR PUBLICATION

No. 117,140

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KEITH A. GLOVER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; JEFFREY SYRIOS, judge. Opinion filed July 13, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GREEN and MCANANY, JJ.

PER CURIAM: Keith A. Glover was charged with one count of aggravated indecent liberties with a child. Before the jury began its deliberation, the trial court denied Glover's request to give a lesser included offense jury instruction on indecent liberties with a child. The jury then found Glover guilty as charged. On direct appeal, Glover argues that the trial court committed reversible error by denying his requested instruction. For the reasons set forth later, we reject this argument. Accordingly, we affirm.

1

E.G.W., the victim, was 14 years old when she met 20-year-old Glover through a mutual friend. The two spoke frequently through Facebook. In at least one of those conversations, E.G.W. and Glover talked about sex. Sometime between May and June 2015, Glover and E.G.W. agreed to meet a couple blocks from Glover's home. That same day, E.G.W. and Glover went inside Glover's home and engaged in sexual intercourse. Though the facts are disputed as to what other sexual acts may have occurred, E.G.W. and Glover engaged in sexual intercourse at least once, perhaps twice. Moreover, they also engaged in kissing, touching, and possibly oral sex.

Roughly two months after the initial sexual encounter, E.G.W. told her mother (S.W.) about the incident. E.G.W.'s parents then contacted the police. Detective James D. Grayson interviewed E.G.W. to get her account of the events the day of the alleged rape. E.G.W. told Detective Grayson that she was on a jog when Glover forcibly took her into his home and raped her.

Glover was also interviewed by Detective Grayson. Glover told Detective Grayson that the sex was consensual and occurred on two separate occasions. Glover also told Detective Grayson that he had engaged in at least one other consensual, sexual act with E.G.W., in which the two did not have sexual intercourse but did engage in kissing and sexual touching with their clothes on.

Glover was charged with one count of aggravated indecent liberties with a child on September 17, 2015. The complaint specified that "on or between the lst day of May, 2015 A.D. and the 31st day of July, 2015 A.D., one KEITH ALLEN GLOVER did then and there unlawfully engage in sexual intercourse with a child, to-wit: E.G.W., fourteen (14) years of age."

Glover waived his preliminary hearing and entered a plea of not guilty. Glover was deemed competent to stand trial. At his jury trial, the State called E.G.W., S.W., and

2

Detective Grayson to testify. Glover did not call additional witnesses and did not testify on his own behalf. The State, nevertheless, provided the jury with a video of Glover's interview with Detective Grayson. It is unclear from the record if the jury heard the entire content of the interview or only portions of it.

E.G.W. was called to testify first. She told the jury that she met Glover through her friend, Glover's ex-girlfriend, Sam. E.G.W. testified that she was walking her dog when she happened upon Glover and began speaking to him. Glover convinced E.G.W. to go with him to his house. Once in the house, Glover began kissing E.G.W., touching her face, and pushing her up against the wall. Glover took E.G.W.'s clothes off and began touching her between her legs. Eventually, Glover inserted a "spermicide pill" inside of her and began having vaginal intercourse with her. Then, E.G.W. put her clothes on and left Glover's home. She testified that she did not want to nor "really planned on" having sex with Glover but "at one point . . . wondered about it."

About one month after the incident, E.G.W. told her sister that she "had sex with [Glover]." Another month later, E.G.W. also told her mother about the incident. She testified that she told her mother: "I was going on a walk and I ran into Sam's ex-boyfriend. And then h[e] and I had sex. And she asked if I ever wanted to. And I said, like every kid, they always wonder, but they never—." E.G.W. was then interrupted by the prosecutor. E.G.W. testified that she thought "rape" meant having sex though never really wanting to and that she had described the incident with Glover to Detective Grayson as rape. E.G.W. then denied ever performing oral sex or having oral sex performed on her. E.G.W.'s testimony referred only to the one incident of sexual intercourse and no other sexual encounters.

On cross-examination, E.G.W. testified that she had arranged to meet up with Glover on the day in question, rather than simply running into him. She was asked but did not recall telling Glover explicitly sexual comments about wanting to have sexual contact

3

with him. She also told the jury that she continued to have contact with Glover after the incident in question. E.G.W. testified that she first told police that the sex with Glover was rape but then later told them it was consensual.

E.G.W.'s mother S.W. testified next. She testified that her daughter came to her and told her she was raped. She further testified that E.G.W. told her that she met up with Glover one day and he told her that if she didn't come with him to his house, that he would hurt her and her family. After hearing this information, she told her husband who called a friend who was a police officer. The next day that officer put the family in touch with Detective Grayson. S.W. attended both interviews that Detective Grayson conducted with E.G.W., but was present in the room for only some of the second interview.

Detective Grayson was the State's last witness. He testified that in his interview with E.G.W. on August 4, 2015, E.G.W. claimed that Glover forcibly took her into his house, began kissing her, and then raped her. She claimed that Glover did use a condom. She said he took off some of her clothing and gave some other details about the experience.

Glover was also interviewed by Detective Grayson on August 4. Glover described the sexual encounters with E.G.W. as consensual and as a part of an ongoing relationship between the two of them. He described two instances of having sex with E.G.W. and one instance of having sexual contact that did not ultimately end in sexual intercourse and was done with their clothes on.

Glover specified that during his first sexual encounter with E.G.W., she initiated the contact and asked to meet with him. Glover told the detective that he and E.G.W. made a plan to have sex at his house. Once inside the house, E.G.W. initiated sexual contact, then Glover kissed E.G.W.'s neck before going into his bedroom. E.G.W. removed her shirts; Glover removed his clothes before removing E.G.W.'s pants and

4

underwear. They performed oral sex on one another. Glover then put a spermicide capsule into E.G.W.'s vagina before the two engaged in vaginal intercourse. Glover then kissed E.G.W. before she left the house.

Glover told the police that a second sexual encounter happened with E.G.W., and it was very similar to the first instance of sexual intercourse. He told police that a condom was never used but was considered and examined. Spermicide was not used during the second occasion.

Glover told police about a third occasion in which he had sexual contact with E.G.W. He said that they "played around," i.e., touched and kissed each other. He specified that the two kept their clothes on and no intercourse occurred. Glover also admitted to touching E.G.W.'s vagina on that date outside of her clothing.

On August 5, Detective Grayson requested that E.G.W. submit to another interview. In that interview, she changed her story to say that she and Glover had sex two times but that they occurred on the same day. She also told the detective that she was not physically forced into his house but felt she would have been so she went in under that assumption. She maintained that Glover forced her to give him oral sex, but then claimed that the sexual experience was not rape because it was consensual.

Detective Grayson testified that E.G.W. claimed to have erased her Facebook messages to and from Glover. Additionally, he felt that since both admitted to having sex with each other, obtaining such messages would be unnecessary.

Glover did not testify on his own behalf and did not call any additional witnesses.

Roughly ten minutes into deliberation, the jury submitted a question to the trial court. The question asked was "[w]hy is this aggravated indecent liberties and not just

5

indecent liberties?" After a lengthy discussion, both sides agreed that the trial court could answer by notifying the jury that "[a]ggravated indecent liberties with a child is the title of the offense with which the State has charged Keith Glover." After deliberating for roughly one hour, the jury returned a verdict of guilty.

An additional competency evaluation was completed before Glover was found competent to stand for sentencing. Glover was sentenced to 66 months in prison and lifetime postrelease supervision.

*Did the Trial Court Err in Denying Glover's Request for a Lesser Included Offense Instruction?*

Glover argues that the trial court erred by failing to give a lesser included offense instruction on indecent liberties with a child. The State argues that the instruction was neither legally nor factually appropriate and was, therefore, properly denied.

*Standard of Review*

This court employs a four-step process when reviewing a trial court's failure to give a lesser included instruction.

> "(1) first, the appellate court should consider the reviewability of the issue from both jurisdiction and preservation viewpoints, exercising an unlimited standard of review; (2) next, the court should use an unlimited review to determine whether the instruction was legally appropriate; (3) then, the court should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction; and (4) finally, if the trial court erred, the appellate court must determine whether the error was harmless." *State v. Soto*, 301 Kan. 969, Syl. ¶ 9, 349 P.3d 1256 (2015).

6

The trial court errs in failing to instruct the jury on lesser included offenses when there is some evidence that would reasonably justify a conviction of the lesser included offense. K.S.A. 2017 Supp. 22-3414(3); *State v. Armstrong*, 299 Kan. 405, 432, 324 P.3d 1052 (2014). An offense is a lesser included offense if the elements of the lesser crime are identical to some of the elements of the crime charged or if the offense is a lesser degree of the same crime. K.S.A. 2014 Supp. 21-5109(b); *State v. Simmons*, 295 Kan. 171, 176, 283 P.3d 212 (2012). The duty to instruct is triggered by the defendant's request for such instruction and applies even if the evidence is weak, inconclusive, and consists solely of the defendant's testimony. *State v. Maestas*, 298 Kan. 765, Syl. ¶ 6, 316 P.3d 724 (2014).

*Preservation*

First, it is undisputed that the issue is preserved for appellate review. The record shows that Glover requested the lesser included offense instruction. When his request was denied, Glover properly made a contemporaneous objection on the record before the jury retired to consider the verdict as required by K.S.A. 2017 Supp. 22-3414(3). Additionally, Glover timely filed his direct appeal.

*Legal Appropriateness*

Next, Glover argues that the two offenses are different degrees of indecent liberties with a child, making indecent liberties with a child a lesser included offense of aggravated indecent liberties with a child. In making this argument, Glover emphasizes that the two offenses are now found in the same statute. The State responds to this argument by asserting that the instruction was not legally appropriate because the instruction would have impermissibly broadened the actus reus of the crime for which Glover was charged.

7

In denying Glover's request for an instruction on indecent liberties with a child, the trial court utilized the elements test under K.S.A. 2014 Supp. 21-5109(b)(2) and found that indecent liberties with a child has elements that are not found in aggravated indecent liberties with a child. The trial court stated:

> "I don't believe it meets the required test. I do believe that there would be an issue, and maybe it would be a lesser if the State charged the primary crime under [K.S.A. 2014 Supp. 21-5506] subsection ([b])(2)([A]) or (2)([B]) But the State didn't charge that, the State charged aggravated indecent liberties under [(b)(1)]. . . . I looked at those elements, they're different to each other . . . . I looked at how PIK identified the alternate charge, the charge under the indecent liberties, and I just don't think the elements match up according to what the law requires.
>
> "I would also state that I believe that there is a different mens rea or criminal intent. I believe the indecent liberties requires . . . the higher of the two, when we compare intentionally and knowingly. . . . Ultimately, the elements don't meet the law in regard to a lesser."

The trial court was correct in finding that the two offenses fail the strict elements test because all the elements of indecent liberties with a child are not identical to some of the elements of aggravated indecent liberties with a child under K.S.A. 2014 Supp. 21-5506(b)(1) as required by K.S.A. 2014 Supp. 21-5109(b)(2). The trial court, nevertheless, did not analyze whether indecent liberties with a child is a lesser degree of aggravated indecent liberties with a child.

In relevant part, K.S.A. 2014 Supp. 21-5506(b)(1) defines aggravated indecent liberties with a child as "sexual intercourse with a child who is 14 or more years of age but less than 16 years of age." The crime of indecent liberties with a child applies to 14- or 15-year-old child victims as well and is defined as: "any lewd fondling or touching the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." K.S.A. 2014

8

Supp. 21-5506(a)(1). Indecent liberties with a child is a severity level 5 person felony, while aggravated indecent liberties with a child is a severity level 3 person felony. K.S.A. 2014 Supp. 21-5506(c).

As a preliminary matter, the trial court's concern with the culpability requirements of the two offenses may not be dispositive of the issue at hand. In *State v. Edwards*, 299 Kan. 1008, 1014, 327 P.3d 469 (2014), our Supreme Court repeated its holding that although theft includes a specific intent element not included in robbery, theft is, nevertheless, a lesser included offense of robbery. See *State v. Plummer,* 295 Kan. 156, 164, 283 P.3d 202 (2012). However, in *State v. Frierson*, 298 Kan. 1005, 1019, 319 P.3d 515 (2014), our Supreme Court held that battery was not a lesser included offense of the charged offense of aggravated robbery for the purpose of instructing the jury. The *Frierson* court pointed out that aggravated robbery required the defendant cause bodily harm to a person in the course of obtaining possession of property through force or the threat of bodily harm. But the crime required no particular intent on the defendant's part to cause bodily harm. 298 Kan. at 1019. On the other hand, battery required a defendant to intentionally or recklessly cause bodily harm to the victim, thereby imposing a mental element not required for aggravated robbery. 298 Kan. at 1019.

Similarly, aggravated indecent liberties with a child under K.S.A. 2014 Supp. 21-5506(b)(1) requires no intent, while indecent liberties with a child under subsection (a)(1) requires proof of an intent element. As a result, indecent liberties with a child cannot be a lesser included offense of aggravated indecent liberties with a child. Thus, the trial court properly refused to instruct the jury on indecent liberties with a child as a lesser included offense of aggravated indecent liberties with a child.

Moreover, the State argues that indecent liberties with a child is neither factually nor legally appropriate because the instruction would impermissibly broaden the actus reus required to prove aggravated indecent liberties with a child as defined in K.S.A.

9

2014 Supp. 21-5506(b)(1). In *State v. Charles*, 304 Kan. 158, 166-69, 372 P.3d 1109 (2016), our Supreme Court held that a lesser included offense instruction may not broaden the State's theory of the case by increasing the breadth of the actus reus when compared with the actus reus specified in the charged offense. Glover correctly points out that the holding in *Charles* revolved around an issue of notice to the defendant. See 304 Kan. at 167-68. Glover further argues that because the instruction was requested by the defendant, the issue of notice as discussed in *Charles* is irrelevant to the issue at hand. This argument, however, fails to take into consideration the greater effect of finding legal appropriateness in giving a lesser included instruction on indecent liberties with a child when a defendant is charged with having sexual intercourse with a child.

Our Supreme Court held that "a lesser included offense instruction may not be a vehicle for broadening the State's theory of the case." *Charles*, 304 Kan. at 167. This finding was made in part because of past precedent stating:

> "A Kansas criminal defendant is always on notice that the State may seek or the district judge be otherwise compelled to give a lesser included instruction involving the same conduct or actus reus described in the complaint but driven by a less culpable or more expansive mental state easier for the State to prove. See *State v. Ramirez,* 299 Kan. 224, 227-28, 328 P.3d 1075 (2014) (conviction of defendant on charge not contained in complaint clear violation of due process)." *Charles*, 304 Kan. at 167.

Because our Supreme Court in *Charles* held that it was neither factually nor legally appropriate to give a lesser included instruction for an offense which impermissibly broadens the actus reus of the offense charged in the complaint, this is another reason why the requested lesser included instruction was not legally appropriate. See 304 Kan. at 167. This court is duty bound to follow our Supreme Court precedent absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). There is no indication of such a departure.

10

Next, although caselaw on this exact issue is limited, available decisions provide guidance against finding that indecent liberties with a child and aggravated indecent liberties with a child under K.S.A. 2014 Supp. 21-5506(b)(1) are lesser degrees of the same offense. Kansas courts generally do not find that forms of sexual touching, or the like, are lesser included offenses of crimes requiring sexual intercourse. See *State v. Gibson*, 246 Kan. 298, Syl. ¶1, 787 P.2d 1176 (1990) (finding aggravated sexual battery is not a lesser degree of the crime of rape); *State v. Belcher*, 269 Kan. 2, 4, 8, 4 P.3d 1137 (2000) (finding aggravated indecent liberties with a child, requiring lewd fondling or touching, not a lesser included offense of rape of a child under the age of 14); *State v. Galloway*, 238 Kan. 415, Syl. ¶ 3, 710 P.2d 1320 (1985) (finding crimes of sexual battery and aggravated sexual battery are not lesser included crimes of rape.)

In *State v. Pfannenstiel*, No. 98,773, 2008 WL 3368529, at *7 (Kan. App. 2008) (unpublished opinion), this court held that indecent liberties with a child under the equivalent of K.S.A. 2014 Supp. 21-5506(a)(1) was not a lesser included offense of aggravated indecent liberties with a child under the equivalent of K.S.A. 2014 Supp. 21-5506(b)(1). The *Pfannenstiel* court first noted that the elements of indecent liberties with a child were not identical to any elements of aggravated indecent liberties. The court then found that indecent liberties with a child could not be a lesser included offense because "the offenses are set forth in two different statutes, and indecent liberties with a child is not a lesser degree of aggravated indecent liberties." 2008 WL 3368529, at *7.

The single difference in the statutory language since the *Pfannensteil* decision is that the two offenses have since been consolidated into one statute. Compare K.S.A. 21-3503 and K.S.A. 21-3504 with K.S.A. 2014 Supp. 21-5506(a) and (b). The consolidation was done as part of a recodification of the Kansas criminal code. L. 2010, ch. 136, § 70. The recodification was done specifically to (1) revise the statutory language to add clarity; (2) reorganize the statutes to place them in a more user-friendly order; (3) reorder

11

statutes to reduce their number; and (4) repeal statutory language no longer in use. Conference Committee Report Brief for H.B. 2668 (March 26, 2010). Those purposes do not necessarily evidence legislative intent to consolidate the offenses for purposes of providing that they are different degrees of the same offense. In fact, the Legislature could have simply added a mirrored section defining sexual intercourse under K.S.A. 2014 Supp. 21-5506(a). The Legislature did not add such language but instead defined the act sexual intercourse with a 14- or 15-year-old child under only the aggravated indecent liberties portion of K.S.A. 2014 Supp. 21-5506(b). Thus, we reject Glover's argument that the consolidation of the two offenses necessitates a finding that the offenses are lesser degrees of the same crime.

Nevertheless, in *State v. Ward*, No. 117,358, 2018 WL 1247168, at *4 (unpublished opinion), *petition for rev. filed* April 6, 2018, this court stated, in reviewing the trial court's ruling refusing to give a lesser included offense instruction, the following: "We assume—without deciding—that indecent liberties is, as a matter of law, a lesser included offense of aggravated indecent liberties. As a result, we will next consider whether such an instruction was factually appropriate in this case." In *Ward*, this court merely assumed legal appropriateness to address the issue of whether the instruction was factually appropriate in that case. As a result, the *Ward* decision is not determinative of whether indecent liberties with a child is a lesser included offense of aggravated indecent liberties with a child.

Finally, while it is true that Kansas courts have typically held that the simple version of a crime is a lesser degree offense of the aggravated version of the same crime if the aggravated version of the crime is graded as a higher offense. See *State v. Pfannenstiel*, 302 Kan. 747, 753, 357 P.3d 877 (2015) (finding sexual battery, a class A misdemeanor, and aggravated sexual battery, a severity level 5 felony, different degrees of the same crime); *Simmons*, 295 Kan. at 175 (finding simple misdemeanor battery is a lesser degree of the crime of severity level 4 felony aggravated battery). Those cases have

12

generally dealt with cases in which the actus reus required to commit the offenses were substantially the same or similar. See K.S.A. 2017 Supp. 21-5505 ("touching of a victim" was required to commit both sexual battery and aggravated sexual battery); K.S.A. 2017 Supp. 21-5413 (causing bodily harm to another was required to commit both misdemeanor and aggravated battery).

When the crimes are less directly comparable, Kansas courts have also looked to the "gravamen of the prohibited conduct" when determining whether the offenses are a part of the same crime. See *State v. Ramirez*, 299 Kan. 224, 230-31, 328 P.3d 1075 (2014) (finding criminal restraint a lesser degree of kidnapping based on the gravamen of restraint or confinement of a person); *State v. Long*, 234 Kan. 580, 592, 675 P.2d 832 (1984) (finding theft a lesser degree of robbery based on the gravamen of unlawful taking of property), *disapproved of on other grounds by State v. Keeler*, 238 Kan. 356, 710 P.2d 1279 (1985). Black's Law Dictionary defines "gravamen" as "[t]he substantial point or essence of a claim, grievance, or complaint." Black's Law Dictionary 817 (10th ed. 2014). The gravamen of the crimes at issue here, nevertheless, should not be used to decide whether the crimes are lesser degrees of the same offense to avoid an oversimplified generalization of the acts required to commit each offense.

Glover was charged with aggravated indecent liberties under K.S.A. 2014 Supp. 21-5506(b)(1). The State was responsible for proving that Glover engaged in sexual intercourse with a 14- or 15-year-old child beyond a reasonable doubt. Sexual intercourse is defined in pertinent part as "any penetration of the female sex organ by a finger, the male sex organ or any object." K.S.A. 2014 Supp. 21-5501(a). Indecent liberties requires lewd fondling or touching but is silent as to penetration. K.S.A. 2014 Supp. 21-5506(a)(1). The gravamen of both crimes could arguably be defined as engaging in an "unlawful sexual act" with a 14- or 15-year-old child. In fact, K.S.A. 2014 Supp. 21-5501(d) defines "unlawful sexual act" as "any rape, *indecent liberties with a child*, *aggravated indecent liberties with a child*, criminal sodomy, aggravated criminal

13

sodomy, lewd and lascivious behavior, sexual battery or aggravated sexual battery." (Emphasis added.) Our Supreme Court has previously disapproved of generalizing these crimes as a generic "same crime" for means of making a lesser included offense analysis. See *Gibson*, 246 Kan. at 302 (holding that Legislature did not intend to create generic "same crime" class by defining "unlawful sexual acts" and such classification was an improper means of finding aggravated sexual battery as a lesser included offense of rape). The *Gibson* holding indicates the reason not to define the crimes within a generic class for purposes of deciding whether the crimes at issue are lesser degrees of the same offense.

For the preceding reasons, we conclude that it was not legally appropriate for the trial court to give a lesser included instruction on indecent liberties with a child.

*Factual Appropriateness*

Glover argues that the lesser included offense instruction on indecent liberties with a child was factually appropriate in his case.

Even when an offense includes a lesser included crime, failure to instruct on the lesser included crime is erroneous only if the instruction would have been factually appropriate under K.S.A. 2014 Supp. 22-3414(3); see *State v. Molina*, 299 Kan 651, 661, 325 P.3d 1142 (2014). When evaluating whether a lesser included instruction is factually appropriate in an individual case, the standard of review is "[i]f, after a review of all the evidence viewed in the light most favorable to the prosecution, [this court is] convinced that a rational factfinder could have found the defendant guilty of the lesser crime, failure to give the instruction is error." *State v. Fisher*, 304 Kan. 242, 258, 373 P.3d 781 (2016). But see *Charles*, 304 Kan. at 164-65 (considering State's request, after close of evidence, for an expansive lesser included offense instruction).

14

At trial, the jury was provided testimonial evidence from E.G.W. that Glover kissed her, took her clothes off, and touched her vagina. Similar evidence was revealed in the testimony given by Detective Grayson. The video recording of Glover's interview with Detective Grayson also provided evidence of what Glover called "playing around" in a sexual manner but without having sexual intercourse. The record does not irrefutably show whether the jury heard that portion of the interview but shows that the jury did watch some of the video. Regardless, there was also ample evidence that Glover and E.G.W. had sexual intercourse at least once.

The State charged Glover with sexual intercourse. "Sexual intercourse" is specifically defined as "any penetration of the female sex organ by a finger, the male sex organ or any object." K.S.A. 2014 Supp. 21-5501(a). Because there was ample evidence of sexual intercourse, Glover cannot meet his burden in convincing this court that a rational fact-finder could have found him guilty of the lesser crime. Thus, it was not factually appropriate for the trial court to instruct on the lesser included instruction.

*Reversibility*

For the sake of argument, if the instruction were legally and factually appropriate, the trial court's failure to give the instruction would be error. As a result, we would be required to apply the constitutional harmless error standard for the trial court's failure to give a lesser included offense instruction. The burden would be on the State to prove beyond a reasonable doubt that the error did not affect the outcome of the trial in light of the entire record, i.e., there was no reasonable possibility that the error contributed to the verdict. *State v. Cooper*, 303 Kan. 764, 768, 366 P.3d 232 (2016). "An instruction on a lesser included offense is not foreclosed because it is inconsistent with either the evidence presented by the defense or the theory advanced by the defense. A defendant is entitled to inconsistent defenses. [Citations omitted.]" *State v. Williams*, 303 Kan. 585, 599, 363 P.3d 1101 (2016).

Glover argues that the question submitted by the jury, in conjunction with his defense at trial, sufficiently demonstrate that the instruction would have made a difference in the verdict. Because Glover's argument is unpersuasive, we conclude that Glover has failed to firmly convince this court that giving the instruction would have made a difference in his verdict.

Roughly ten minutes after the jury retired to deliberate it submitted a question to the court. The question asked: "Why is this aggravated indecent liberties and not just indecent liberties?" After a lengthy discussion between all the parties, the trial court responded to the jury's question. The answer simply stated: "Aggravated indecent liberties with a child is the title of the offense with which the State has charged Keith Glover."

Glover argues that "[t]his question provides evidence that the jury was looking for the possibility of some sort of compromise." Such a supposition, however, inserts inappropriate speculation into what the jury was thinking when it submitted its question. In discussing the issue, the State explained to the court:

> "[T]the jury may be inquiring as to why is the defendant charged with aggravated indecent liberties versus unlawful voluntarily sexual relations, which is the Romeo and Juliet statute that was eluded to by defense counsel. Ultimately, the answer to that question is because of the age of [E.G.W.] and the age of the defendant don't fit that statute. But it's probably wise not to speculate or make conjectures as to what is being asked beyond the words on the paper."

Glover's defense counsel agreed to the narrow answer to avoid further speculations surrounding the jury's question.

The jury was provided ample evidence that E.G.W. may have "consented" to the sexual intercourse with Glover. Consent, however, is not a legally permissible reason for the jury to acquit Glover of the crime he was charged with. K.S.A. 2014 Supp. 21-5506(b)(1) is silent on consent. Additionally, as explained by the State, 20-year-old Glover was outside the age range to be charged with voluntary sexual relations with E.G.W. See K.S.A. 2014 Supp. 21-5507. Moreover, Glover did not dispute that he had sexual intercourse with E.G.W. and overwhelming evidence was presented to prove that sexual intercourse had indeed occurred.

Glover asserts that his defense at trial "was based on seeking to reduce or eliminate his criminal culpability based on the circumstances of the case." The record shows that at trial, Glover attempted to reduce his culpability by pointing to E.G.W.'s arguably consensual involvement in the sexual intercourse. Glover also asserted that E.G.W. initiated contact with Glover by asking to meet at a designated location on the day the sexual intercourse at issue occurred. Glover by no means refuted the claim that the sexual intercourse occurred or that it occurred unknowingly on his behalf. In fact, Glover admitted in an interview with Detective Grayson that the alleged sexual intercourse indeed occurred and Detective Grayson testified to that. As a result, the evidence of sexual intercourse excludes the theory that Glover merely fondled or touched E.G.W. Thus, there was no reasonable possibility that the trial court's failure to give the indecent liberties with a child instruction would have made a difference in the verdict.

Affirmed.